IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SAMUEL B. SANDOVAL,

    Plaintiff,

v.                                                                                             CV 14-82 CG

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Samuel Sandoval's *Motion to Reverse and Remand to Agency for Rehearing, With Supporting Memorandum*, ("Motion"), (Doc. 16), filed June 27, 2014; Defendant's *Brief of the Commissioner*, ("Response"), (Doc. 20), filed September 25, 2014; and *Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Reverse and Remand for Rehearing*, ("Reply"), (Doc. 21), filed October 10, 2014.

On July 15, 2010, Mr. Sandoval filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423. (Administrative Record "AR" 173-76). On July 27, 2010, Mr. Sandoval filed an application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382c. (AR 177-80). In both applications, Mr. Sandoval alleged disability commencing February 1, 2001. (AR 173, 177). His claims for benefits were initially denied, (AR 78-81, 82-83), and again upon reconsideration. (AR 84-86, 87-90). A request for a hearing was filed on March 20, 2011, (AR 91-92), and a hearing

was held on October 31, 2012 before Administrative Law Judge ("ALJ") Ann Farris. (AR 41-68). Mr. Sandoval and Mark Cheairs, an impartial vocational expert ("VE"), testified at the hearing. (*Id.*) Mr. Sandoval was represented at the hearing by attorney Gary Martone. (AR 13). ALJ Farris issued an unfavorable decision on December 14, 2012, finding that Mr. Sandoval was not disabled under the Social Security Act from February 1, 2001 through the date of the decision. (AR 21). Through counsel, Mr. Sandoval filed an application for review by the Appeals Council on May 29, 2012, which was summarily denied, (AR 1-5), making the decision of ALJ Farris the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Mr. Sandoval argues that the ALJ committed reversible, legal error by failing to: (1) find a severe mental health impairment at step two; (2) consider the effect of those mental health impairments on Mr. Sandoval's residual functional capacity ("RFC") at step four; and (3) provide a reasonable explanation for the conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT") at step five. (Doc. 16 at 4, 10).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ failed to consider probative evidence that is inconsistent with the RFC finding, the Court finds that the Motion should be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

I.  **Standard of Review**

The standard of review in a Social Security appeal is whether the

Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits (DIB) and supplemental security income (SSI), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III.     Background

In July 2010, Mr. Sandoval applied for DIB and SSI allegedly due to his recurring dislocated shoulder and related surgery. (AR 74, 78). After initially dislocating his right shoulder in 2002, (AR 329), Mr. Sandoval dislocated his shoulder several times through 2009. (AR 332, 334, 344, 350, 353-54, 358, 363, 366, 375, 379, 383, 385-86, 387, 393, 424, 432). Mr. Sandoval underwent surgery for his shoulder in September 2009. (AR 408). He attended physical therapy for several months following the surgery. (AR 454-64)

In addition, there are reports of various mental health issues in the record, including Mr. Sandoval's struggle with substance use. (AR 567-73). He was diagnosed with opioid dependence, major depressive disorder, bipolar disorder type I, and post-traumatic stress disorder ("PTSD"). (AR 567-73, 715-16). Treatment notes reflect that Mr. Sandoval's medications, including Suboxone, among others, seem to control his symptoms. (AR 728, 730). However, Mr. Sandoval's psychiatrist, Dr. Richard Laughter opined that Mr. Sandoval is "improving but is not at baseline" and that "[h]e is unable to work due to the severity of his symptoms." (AR 728).

At step one, the ALJ found that Mr. Sandoval had engaged in substantial gainful activity since the alleged onset date of February 1, 2001. (AR 15). The ALJ proceeded with the sequential evaluation process for the period after May 31, 2006.[2] (*Id*). At step two, the ALJ concluded that Mr. Sandoval was severely impaired by recurrent right shoulder dislocations and status post repair of the shoulder. (AR 16). The ALJ determined that Mr. Sandoval's medically determinable mental impairments, such as his history of opioid dependence, Suboxone treatment, depression, and PTSD were non-

---

[2] The parties do not dispute the ALJ's conclusion as to the date of disability onset.

severe. (*Id*). At step three, the ALJ determined that none of Mr. Sandoval's impairments, solely or in combination, met or medically equaled the severity of one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (AR 17).

The ALJ proceeded to step four. The ALJ found that Mr. Sandoval's statements as to the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with her RFC assessment. (AR 17-18). She based this finding on Mr. Sandoval's self-reported daily activities, including the fact that he cares for himself by preparing simple meals, performing light chores, driving, and shopping, and attends CDL classes. (AR 19-20). The ALJ also considered objective medical evidence, including treatment notes regarding multiple shoulder dislocations, physical therapy records, and his surgery and post-surgery recovery. (AR 18-19). As for opinion evidence, the ALJ discussed the physical RFC assessment by State Agency physician Eileen Brady, M.D. (AR 19).

The ALJ ultimately found that Mr. Sandoval could perform light work, but could only reach occasionally with the right arm. (AR 17). The ALJ then explained that, based on the testimony from the VE, Mr. Sandoval is unable to perform his past relevant work as an Air Conditioning Technician Helper. (AR 20).

At step five, the ALJ inquired whether Mr. Sandoval would be able to perform any other work existing in significant numbers in the national economy. (AR 21). The ALJ noted that Mr. Sandoval was 16 years old on the alleged disability onset date, and therefore classified as a "younger individual" in accordance with the Regulations. (AR

20). The ALJ also determined that Mr. Sandoval has a limited education and is able to communicate in English. (*Id*).

The VE testified at the hearing that an individual with Mr. Sandoval's same age, education, work experience, and RFC could perform the jobs of flagger, cashier, and fast foods worker. (AR 21). The VE stated that those jobs existed in significant numbers in the national economy. (*Id*). The ALJ noted that the VE's testimony was inconsistent with the DOT, but explained that there is a reasonable explanation for the discrepancy, since the DOT does not address single arm limits. (*Id*). The ALJ then adopted the VE's testimony. (*Id*).

The ALJ concluded that because Mr. Sandoval was capable of performing work existing in significant numbers in the national economy, he was not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 21).

## IV.   Analysis

Mr. Sandoval argues that the ALJ committed reversible, legal error by failing to: (1) find a severe mental health impairment at step two; (2) consider the effect of those mental health impairments on Mr. Sandoval's RFC at step four; and (3) provide a reasonable explanation for the conflict between the VE's testimony and the DOT at step five.  (Doc. 16 at 4, 10).

The Commissioner responds that while Mr. Sandoval suffers from mental health impairments, the ALJ properly found that those impairments were not severe at step two. (Doc. 20 at 10-15). The Commissioner also argues that the ALJ considered all impairments, severe and non-severe, and all record evidence at step four in determining Mr. Sandoval's RFC. (*Id*). Even if there was an error, it would be harmless, because the

record supports her finding that Mr. Sandoval suffers from no significant mental limitations. (Doc. 20 at 15). Finally, the Commissioner contends that there is no conflict between the DOT and the VE's testimony, since the DOT does not address whether certain jobs require constant reaching on one side of the body. (Doc. 20 at 20-21).

   A. *Mr. Sandoval's Challenge to the ALJ's Finding at Step Two*

Mr. Sandoval argues that the ALJ erred in finding that his mental health impairments were non-severe at step two of the sequential analysis. (Doc. 16 at 4-8). In this case, the ALJ found that Mr. Sandoval's recurrent right shoulder dislocations and status post repair of the shoulder were severe impairments. (AR 16). The ALJ did not find Mr. Sandoval's opioid dependence, depression, bipolar disorder, or PTSD to be severe. (AR 16). The ALJ reasoned that while Mr. Sandoval was diagnosed with these impairments, his symptoms did not cause more than minimal limitation in his ability to perform basic mental work activities. (*Id*).

At step two, "only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process." *Langley*, 373 F.3d at 1123 (quotations omitted). This is referred to as a "de minimus" standard. *See id*. The claimant need only establish—and an ALJ need only find—one severe impairment to avoid a denial of benefits at that step. *Dray v. Astrue*, No. 09-7058, 353 Fed. Appx. 147, 149 (10th Cir. Nov. 17, 2009) (unpublished). If the ALJ finds the claimant has a severe impairment, then she may not deny benefits at step two, and must proceed to step three. *See id*. Therefore, "the failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is

severe." *Id.*

Mr. Sandoval's argument that the ALJ erred at step two fails as a matter of law. At step two, all the ALJ was required to do was determine whether Mr. Sandoval suffered from at least one severe impairment, and if so, proceed to step three of the sequential analysis. The ALJ found that Mr. Sandoval was severely impaired with recurrent right shoulder dislocations and status post repair of the shoulder, and proceeded to step three; therefore, any error at step two with respect to Mr. Sandoval's mental health impairments was harmless. *See id.* (citing *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007)). The Court cannot find that the ALJ committed reversible legal error at step two.

B. *Mr. Sandoval's Challenge to the ALJ's Finding at Step Four*

Mr. Sandoval then argues that the ALJ failed to consider and adequately discuss his mental health impairments at step four, rendering an improper RFC. (Doc. 16 at 4-8). Specifically, Mr. Sandoval contends that the ALJ did not discuss particularly probative evidence of Mr. Sandoval's mental impairments, including treatment notes and assessments by psychiatrist Dr. Richard Laughter, as required by the Social Security Regulations and Tenth Circuit jurisprudence. (Doc. 16 at 7-8).

The Commissioner responds that the ALJ reviewed and considered the entire medical record, and properly concluded that Mr. Sandoval was not significantly limited by any mental health impairments. (Doc. 20 at 12-15). Further, even if the Court were to find that there was an error at step four, the Commissioner maintains that any error would be harmless. (Doc. 20 at 15-16).

1. *The ALJ's RFC Determination*

At step four, the ALJ must evaluate a claimant's RFC. "In determining a claimant's…abilities, the ALJ should 'first assess the nature and extent of [the claimant's]…limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis.'" *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R. § 404.1545(b)). In doing so, the ALJ must consider all the claimant's "impairments(s), and any related symptoms … [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Sissom v. Colvin*, No. 12-6131, 512 Fed. Appx. 762, 767 (10th Cir. Mar. 1, 2013) (unpublished) (citing 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). The RFC assessment is based on all of the evidence in the case record, both medical and non-medical. *Sissom*, 512 Fed. Appx. at 767.

In this case, the ALJ found Mr. Sandoval to have the RFC to perform "light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that the claimant is able to reach only occasionally with the right arm." (AR 17). The ALJ noted in her discussion that Mr. Sandoval's medically determinable mental impairments, singly and in combination, "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (AR 16).

In making the RFC determination, an ALJ must consider all evidence in the record, although she is not required to discuss every piece of evidence in her decision. *Clifton v. Charter*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)); *see also Briggs ex rel. Briggs v. Massanari*,

248 F.3d 1235, 1239 (10th Cir. 2001). In the absence of findings supported by specific weighing of the evidence in the record, the ALJ leaves the Court unable to assess whether relevant evidence adequately supports her conclusion. *Clifton*, 79 F.3d at 1009; *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003).

Specifically, the Social Security Regulations require the ALJ to evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 404.1527(b), 416.927(b). However, medical assessments that "go beyond purely medical findings to reach 'issues reserved to the Commissioner' – such as the claimant's RFC…and the ultimate question of disability – 'are not medical opinions.'" *Lakey v. Barnhart*, No. 04-7041, 127 Fed. Appx. 455, 457 (10th Cir. April 5, 2005) (unpublished) (citing 20 C.F.R. § 404.1527(e)). Indeed, "the agency will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *Id.* (internal citations omitted). Nevertheless, the ALJ must evaluate all evidence in the record that is relevant to the question of disability, "including opinions from medical sources about issues reserved to the Commissioner." *Id.* (citing Social Security Ruling ("SSR") 96-5P, 1996 WL 374183, at *3).

With regard to Mr. Sandoval's mental impairments, the ALJ discussed a 2011 Behavior Health Assessment reporting Mr. Sandoval's struggle with substance use, which included diagnoses for opioid dependence, major depressive disorder, and a Global Assessment of Functioning ("GAF") score of 51.[3] (AR 16, 567-73). The ALJ also referred to a psychological evaluation conducted by Dr. Laughter in December 2011,

---

[3] "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." *Lanley*, 373 F.3d at 1122 n.3 (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) [DSM–IV–TR] at 32). GAF scores between 51 and 60 indicate "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." *Roybal v. Astrue*, No. 06-4189, 224 Fed. Appx. 843, 845 n.2 (10th Cir. May 22, 2007) (unpublished) (citing DSM-IV at 34).

reporting Mr. Sandoval's history with substance use and diagnosing him with: opiate dependence, on suboxone in remission; bipolar disorder type I; and PTSD. (AR 16, 715-16). The ALJ noted that medications seemed to control Mr. Sandoval's symptoms. (AR 16, 728, 730).

However, the ALJ did not acknowledge that Mr. Sandoval had been seeing Dr. Laughter on a regular basis since December 2011. (AR 715-16, 724, 726, 727, 728, 730). Nor did she mention Dr. Laughter's other opinions that Mr. Sandoval is "improving but is not at baseline" and that "[h]e is unable to work due to the severity of his symptoms." (AR 728). Dr. Laughter also consistently reported a GAF score of 50.[4] (AR 726, 728, 730). The ALJ did not explain what weight she gave Dr. Laughter 's opinions, or provide any explanation for why she rejected parts of his assessment, and adopted others.

Although Dr. Laughter's reports include a statement on an issue reserved to the Commissioner—that Mr. Sandoval cannot work due to his symptoms—his findings remain probative evidence that must be evaluated. *Lakey*, 127 Fed. Appx. at 457. Indeed, his findings stem from a continuous, examining relationship between Dr. Laughter and Mr. Sandoval, and are supported by other objective evidence on the record. *See* AR 567-73. Further, the fact that the ALJ discussed Dr. Laughter's reports generally, including his diagnoses and successful medication treatments, is not enough. An ALJ cannot adopt some restrictions or findings by a medical source, but disregard other restrictions without any explanation. *Confere v. Astrue*, No. 06-4217, 235 Fed.

---

[4] A GAF score between 41-50 indicate "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning." *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007 (citing *Langley*, 373 F.3d at 1122 n.3). GAF scores between 41 and 50 suggest an inability to keep a job. *Id*.

Appx. 701, 704 (10th Cir. April 24, 2007) (unpublished) (citing *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007).

Therefore, the ALJ's failure to discuss Dr. Laughter's findings, including that Mr. Sandoval is unable to work due to his psychological symptoms, even to explain why she found them unpersuasive, is grounds for reversal. *Ledford v. Barnhart*, No. 05-7111, 197 Fed. Appx. 808, 811 (10th Cir. Oct. 19, 2006) (unpublished) (internal citations omitted) ("The failure to apply the correct legal standard[s] or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.").

### 2. *Harmless Error*

The Commissioner urges the Court to decline to remand on this basis, arguing that any error by the ALJ at step four is harmless. An ALJ's error may be considered harmless in exceptional circumstances, "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 375 F.3d 1140, 1145 (10th Cir. 2004). In the context of analyzing objective evidence, Tenth Circuit precedents "allow the ALJ to engage in less extensive analysis where 'none of the record medical evidence conflicts with [his RFC] conclusion.'" *Wall v. Astrue*, 561 F.3d 1048, 1068-69 (10th Cir. 2009) (citing *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)). It is clear that "when the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard*, 379 F.3d at 947.

Specifically, the Commissioner argues that there is sufficient evidence to indicate

that the ALJ would not have found Dr. Laughter's findings persuasive, even if she had considered them in her decision. (Doc. 20 at 15-16). Further, the Commissioner argues that Mr. Sandoval has not demonstrated that the outcome of the case would have been different if the ALJ's decision had included more discussion of his mental impairments. (Doc. 20 at 15).

Mr. Sandoval had been seeing Dr. Laughter on a regular basis since December 2011. (AR 715-16, 724, 726, 727, 728, 730). In a psychological evaluation conducted by Dr. Laughter in December 2011, he reported Mr. Sandoval's history with substance use and diagnosed him with: opiate dependence, on suboxone in remission; bipolar disorder type I; and PTSD. (AR 715-16). He prescribed several medications to control these conditions. (AR 716). Dr. Laughter reported in subsequent treatment notes that medications had been helping . (AR 724, 728, 730). Dr. Laughter also opined that Mr. Sandoval is "improving but is not at baseline" and that "[h]e is unable to work due to the severity of his symptoms." (AR 728). Dr. Laughter recorded symptoms including "poor sleep, mood instability, racing thoughts, poor concentration, unable to complete projects." (AR 726). In his treatment notes, Dr. Laughter consistently reported a GAF score of 50.[5] (AR 726, 728, 730).

Dr. Laughter's findings are largely inconsistent with the ALJ's RFC determination that Mr. Sandoval had no mental limitations. *See Howard*, 379 F.3d at 947; *See also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-65 (10th Cir. 2012) (holding that the ALJ's failure to weigh medical opinions was harmless since any medical opinions in the record on the claimant's ability to work were consistent with the RFC finding). Indeed,

---

[5] A GAF score between 41-50 indicate "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning." *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007 (citing *Langley*, 373 F.3d at 1122 n.3). GAF scores between 41 and 50 suggest an inability to keep a job. *Id.*

even though Dr. Laughter opined that Mr. Sandoval was "not at baseline" and unable to work due to the severity of his symptoms, the ALJ ultimately found that Mr. Sandoval did not suffer from any mental limitations. (AR 17).

Given these inconsistencies, the Court cannot confidently say that, even after considering Dr. Laughter's treatment notes and findings, no reasonable administrative factfinder could conclude that Mr. Sandoval was not in any way limited by his mental impairments. Mr. Sandoval's mental capacity to perform work-related activities is part of his RFC. *See* 20 C.F.R. §§ 404.1545(c), 416.945(c). The extent to which he can work, and the ultimate question of disability, must be determined in light of those restrictions. *See* SSR 85-16, 1985 WL 56855, at *2. Therefore, the ALJ's failure to consider Dr. Laughter's assessments is not harmless, and is reversible error. On remand the ALJ should address Dr. Laughter's findings that are inconsistent with her RFC, and explain why they are not persuasive.

**V.     Conclusion**

For the reasons discussed above, the Court concludes that the ALJ failed to properly consider probative evidence inconsistent with her RFC finding. On remand, the ALJ should consider Dr. Laughter's assessments of Mr. Sandoval and, if necessary, explain why she finds them unpersuasive. The Court does not decide any other issue raised by Mr. Sandoval, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Reverse and Remand to Agency for Rehearing, With Supporting Memorandum*, (Doc. 16), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

_____
CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE